UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DARRIUS T. GARNES,**

       **Plaintiff,**

                                    **CIVIL ACTION NO. 3:21cv806**
**v.**                                 **JURY TRIAL DEMANDED**

**SLURRY PAVERS, INC.,**

       **SERVE:**     **Registered Agent:**
                    **Incorp Services, Inc.**
                    **7288 Hanover Green Drive**
                    **Mechanicsville, VA 23111**

       **Defendant.**

## COMPLAINT

COMES NOW the plaintiff, Darrius T. Garnes ("Plaintiff" or "Mr. Garnes"), by and through counsel, and moves this court for entry of judgment in his favor, and against the defendant, Slurry Pavers, Inc. ("Slurry Pavers"), and avers as follows:

### Nature of Action

1.      This is an action at law arising out of discrimination on the basis of race and color, as well as hostile work environment, in the course of employment of Plaintiff, Mr. Garnes, by Slurry Pavers, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981.

### Parties

2.      Mr. Garnes is a Black resident and citizen of Henrico, Virginia.

3.      Mr. Garnes was an employee of Slurry Pavers within the meaning of 42 U.S.C. § 2000e(f) on an intermittent basis since 2006. Mr. Garnes was most recently employed in the

position of "Truck Driver" from October or November 2017, until his termination on or about May 7, 2020.

4.     Slurry Pavers was an employer within the meaning of U.S.C. § 2000e(b) with its principal office located in Richmond, Virginia.

5.     Slurry Pavers was engaged in an industry affecting commerce and had more than 15 employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year, and during all times alleged herein, within the meaning of 42 U.S.C. § 2000e(g) and (h).

## Jurisdiction and Venue

6.     Jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f), as amended, to secure the rights of Plaintiff to make and enforce employment contracts, including the making, performance, modification, and termination of those contracts and the enjoyment of all of their benefits, privileges, terms and conditions, including, but not limited to, the right to be free of racial discrimination in the workplace.

7.     All conditions precedent to jurisdiction under 42 U.S.C. § 2000e-5(f)(3) have occurred or have been complied with, namely: a Charge of Employment Discrimination (*see* **Exhibit A**) and an Amended Charge of Discrimination (*see* **Exhibit B**) were filed with the Equal Employment Opportunity Office within 300 days of the commission of the continuing unfair employment practice; Notification of Right to Sue (*see* **Exhibit C**) was issued by the Equal Employment Opportunity Commission on December 14, 2021; and this Complaint is being filed within 90 days of receipt of the Notice of Right to Sue.

8.     The unlawful employment practices alleged in this Complaint were committed within Virginia and within this judicial district.

9.     Venue over the claims of Mr. Garnes is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. 1391(b).

## Facts

10.    Mr. Garnes was employed with Slurry Pavers on an intermittent basis from 2006 until his termination in May of 2020. His most recent period of employment began when he was hired as a Truck Driver in 2017.

11.    During the course of his employment, Mr. Garnes was subjected to discrimination and a hostile workplace by a number of White supervisors and employees of Slurry Pavers.

12.    On September 2, 2019, Mike Wolfe, Mr. Garnes's White supervisor, sent Mr. Garnes a text message concerning the cruise Mr. Garnes and his wife were taking for their honeymoon. The message contained a meme stating, "Why don't black folks go on cruises? They're not falling for that one again." Underneath this image Mike Wolfe said, "Enjoy the cruise my ni$$a," an alternate or censored spelling of a racial epithet.

13.    On September 25, 2019, Mike Wolfe sent another text message to Mr. Garnes stating "suck it, swallow it, and like it . . . my big thick and fat white privileged cock!!"

14.    Mike Wolfe maintained his racially insensitive and discriminatory comments in person. He called Mr. Garnes a "nigger" or "head nigger in charge," along with other disparaging references to his race, on a near daily basis from August 2017 to February 2020.

15.    Wayne Croaker, a White foreman in the shop, referred to Mr. Garnes as "my nigger" whenever he saw him in the shop and would call Mr. Garnes "Delirious" in front of his coworkers to mock Mr. Garnes's traditionally non-White first name (Darrius). When referring to Mr. Garnes as "Delirious," Croaker would also look at Mr. Garnes and mockingly say "Black

lives matter" while raising his fist in front of Mr. Garnes's coworkers. Upon information and belief, Croaker did not refer to any non-Black employees with such "nicknames."

16.     John McCormick, another White supervisor, frequently used the word "nigger" when he saw Mr. Garnes in the shop from 2016 to 2020 and on multiple occasions made inappropriate reference to Mr. Garnes's race by telling him to "bring your Black ass here."

17.     Dale Trent, another White supervisor, in April of 2017 said, "Fuck you nigger," to Mr. Garnes.

18.     Fred Burns and Doug Thomas, both White coworkers, called Mr. Garnes a "nigger" or "fucking nigger" at various points.

19.     Donnie Abernathy, a White supervisor at Slurry Paving, wore a ring containing an image of the Confederate battle flag in the workplace and continued to display the ring when asked to cease wearing it.

20.     Jerry Losh, who is White, acting as Mr. Garnes's supervisor in the spring of 2020, would criticize Mr. Garnes's work on multiple occasions with inappropriate reference to Mr. Garnes's race by stating, "Your Black ass can't do shit, can you?"

21.     Jerry Losh, at the same relevant time period, would, on a daily basis, send the rest of the crew to the hotel after completing work, while forcing Mr. Garnes, the only Black employee on the crew, to clean up.

22.     In the spring of 2020, Jerry Losh refused to book a hotel room with his crew for Mr. Garnes when Mr. Garnes was sent to join his crew. Shawn Weike, another supervisor, thereafter booked a room in a separate hotel for Mr. Garnes, thereby segregating him from his White fellow employees.

23.     On May 7, 2020, Mr. Garnes was terminated by Jerry Losh after his refusal to move a truck before receiving his federally mandated 10-hour break, following repeated refusals to accept Mr. Garnes's right to a break under federal regulations.

24.     During the course of his employment Mr. Garnes was denied promotion because of his race:

      a.     The defendant's Soil Reclamation Division, in which Plaintiff worked, typically had three or four supervisors at a time during Mr. Garnes's employment.

      b.     Wendell Jackson was the only Black supervisor in the Soil Reclamation Division during all of the years Mr. Garnes worked for Slurry Paving, and was only a supervisor for a few months.

      c.     Mr. Garnes possessed the qualifications and experience necessary to serve as a supervisor.

      d.     Mr. Garnes was entrusted with the role of "acting" supervisor from time to time, thereby recognizing his qualifications for the position of supervisor.

      e.     Mr. Garnes requested promotions to supervisor within the Soil Reclamation Division on multiple occasions, including the summer of 2015, February of 2016, May of 2016, August of 2016, March of 2017, March of 2019, and March of 2020, to management, specifically Paul Tarsovich, Dean Hansen, Larry Roberts, and Frank Nash.

      f.     In 2011 or 2012, Tim Bradley, who is White, was hired from outside of the company. Mr. Garnes possessed more experience than Tim Bradley and was asked to train him for his role. Shortly after his hire, and while he

was still being trained by Mr. Garnes, Tim Bradley was promoted to a
supervisory position. Mr. Garnes was more experienced and more
qualified than Tim Bradley but was not considered or selected for the
position.

g.    In February of 2020, Shawn Weike, who is White, was employed by
Slurry as a reclaim operator. At this time, a pothole supervisor position
became available and was not offered to Mr. Garnes, despite him
expressing his interest in the position to Tim Bradley. Instead, Shawn
Weike was promoted to the position of pothole supervisor and Mr. Garnes,
who was more qualified and experienced for the position, was placed on
Weike's crew to train Weike for the position.

**COUNT I: RACE DISCRIMINATION**
**(42 U.S.C. § 2000e-5(f), as Amended,**
**Title VII of the Civil Rights Act of 1964, as Amended)**

25.    The foregoing paragraphs of the Complaint above are repeated, realleged, and
incorporated here by reference.

26.    42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an
employer to "(1) discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's race [or] color . . .; or (2)
to limit, segregate, or classify his employees . . . in any way which would deprive or tend to
deprive any individual of employment opportunities or otherwise adversely affect his status as an
employee, because of such individual's race [or] color."

27.    The defendant, Slurry Pavers, by and through its employees, agents, and officers,
including supervisory employees such as but not limited to Mike Wolfe and Jerry Losh,

6

subjected Mr. Garnes to adverse employment actions that affected the terms, conditions, and/or privileges of Mr. Garnes's employment because of Mr. Garnes's race and/or color (Black/African-American), as alleged herein. The stated reasons for Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. This racial discrimination was done maliciously, willfully, and with reckless disregard for the rights of Mr. Garnes.

28.      Similarly situated individuals of other races were treated more favorably than Mr. Garnes.

29.      As a direct and proximate result of the unlawful conduct of Defendant, by and through its agents, Mr. Garnes has suffered, and will in the future suffer, great damages including medical expenses; loss of career opportunities, promotions, and advancements; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury, in amounts to be determined at trial.

30.      In addition, Mr. Garnes has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action.

### COUNT II: HOSTILE WORK ENVIRONMENT RACE DISCRIMINATION
#### (42 U.S.C. § 2000e-5(f), as Amended,
#### Title VII of the Civil Rights Act of 1964, as Amended)

31.      The foregoing paragraphs of the Complaint above are repeated, realleged, and incorporated here by reference.

32.      42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . .; or (2)

to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race [or] color."

33.     The defendant, Slurry Pavers, by and through its employees, agents, and officers, including supervisory employees such as but not limited to Mike Wolfe and Jerry Losh (White/Caucasian), violated Mr. Garnes's rights under Title VII (42 U.S.C. § 2000e, *et seq.*) by engaging in unwelcome racial harassment and disparate treatment constituting hostile and abusive work environment against Mr. Garnes because of his race and/or color (Black/African-American), as alleged above. These violations consisted of the conduct outlined above. The stated reasons for Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. This racial harassment was done maliciously, willfully, and with reckless disregard for the rights of Mr. Garnes.

34.     The unwelcome harassment was based upon Mr. Garnes's race and/or color (Black/African-American), and affected the terms, conditions, and/or privileges of his employment.

35.     As a direct and proximate result of the unlawful conduct of defendant, Slurry Pavers, Mr. Garnes has suffered, and will in the future suffer, great damages including medical expenses; loss of career opportunities, promotions, and advancements; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

36.     In addition, Mr. Garnes has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action.

## COUNT III: VIOLATION OF 42 U.S.C. § 1981

37.     The foregoing paragraphs of the Complaint above are repeated, realleged, and incorporated here by reference.

38.     Federal law provides for the right "to make and enforce contracts," protecting "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b).

39.     By virtue of the conduct described above, Slurry Pavers intentionally deprived Mr. Garnes of the same rights as are enjoyed by White citizens to the enjoyment of all benefits, privileges, terms, and conditions of his contractual employment relationship with Slurry Pavers.

40.     As a result of defendant's intentional discrimination in violation of 42 U.S.C. § 1981, Mr. Garnes has suffered, and will in the future suffer, great damages including medical expenses; loss of career opportunities, promotions, and advancements; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

41.     In addition, Mr. Garnes has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action.

42.     Defendant's discriminatory actions were undertaken with malice or reckless indifference to Mr. Garnes's rights, entitling him to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court award on Counts I, II, and III judgment in favor of the plaintiff, Darrius T. Garnes, and against the defendant, Slurry Pavers, as follows:

Entry of an order for all relief available under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, including but not limited to Five Hundred Thousand and No/100 Dollars ($500,000.00), or whatever amount may be proven at trial, for compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(b); his attorney fees and costs in this action, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k); interest (pre-judgment and post-judgment) on those amounts; back pay and front pay; and such other and further relief as the Court deems just and equitable under the circumstances.

### **JURY DEMAND**

Plaintiff Darrius T. Garnes demands a trial by jury.

Respectfully submitted,

DARRIUS T. GARNES

By: _/s/Jeremiah A. Denton III___
    Of Counsel

Jeremiah A. Denton III, Esq.
VSB #19191
Jeremiah A. Denton IV, Esq.
VSB #83818
Christopher W. Palermo-Re, Esq.
VSB #96255
DENTON & DENTON
3300 South Building, Suite 208
397 Little Neck Road
Virginia Beach, VA 23452-7356
Tel: 757/340-3232
Fax: 757/340-4505
jerry@jeremiahdenton.com
jake@jeremiahdenton.com
chris@jeremiahdenton.com
*Counsel for Plaintiff*